SONDRA EBNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ebner v. Commissioner
Docket No. 11239-83.
United States Tax Court
T.C. Memo 1985-247; 1985 Tax Ct. Memo LEXIS 388; 49 T.C.M. (CCH) 1541; T.C.M. (RIA) 85247; May 23, 1985. George Delmarmo, for the petitioner Alfred A. Pierri, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND *389 OPINION TANNENWALD, Judge: Respondent determined a deficiency of $4,899.81 in petitioner's Federal income tax for the taxable year 1979 and an addition to tax of $244.99 under section 6653(a). [1] After concessions by respondent on brief in respect of disallowed deductions for taxes and interest expense, the issues remaining for decision are whether (1) petitioner is entitled to a charitable contribution of $12,500; (2) the addition to tax should be sustained; and (3) damages should be awarded to the United States pursuant to section 6673. Some of the facts have been stipulated and are found accordingly. For convenience, the findings of fact and our opinion have been combined. Petitioner resided at 1078 Scott Drive, Valley Stream, New York, at the time she filed her petition herein. At all pertinent times, she was married to Frank Ebner, who resided with petitioner at the aforementioned address. In her return for 1979, petitioner reported gross income of $25,332.98. *390 Petitioner maintained an account in the European American Bank. In 1979, she drew ten checks totalling $12,500 (seven for $500 each, one for $5,000, one for $3,000 and one for $1,000) on that account, all payable to the order of Freedom Exchange Temple. Those checks were deposited in an account at the Chemical Bank, New York, in the name of Freedom Exchange Temple. Freedom Exchange Temple was "founded" by Frank Ebner on December 23, 1978. During 1979, its "trustees" and "officers" were Frank Ebner, petitioner, and their son, Ronald Ebner. [2] At various times during 1979, petitioner's above-stated residence was used as the address of Freedom Exchange Temple. *391 Frank Ebner had sole signing authority over the account in the Chemical Bank in the name of Freedom Exchange Temple. During 1979, numerous checks, in varying amounts, were drawn on the account in the name of Freedom Exchange Temple. Many of these checks were to payees such as Long Island Lighting Co., N.Y. Telephone, Phil-Amy Florist Inc., Visa, Morning Newspaper delivery, and Jamaica Water Company, and to retail department stores such as Sears, Lord and Taylor, Abraham & Strauss, Bloomingdales, and Franklin Simon. Petitioner had credit cards with the aforementioned stores, among others, as well as a Visa card. The aforementioned payments were for amounts billed to the credit cards. One check in the amount of $2,562.50 was drawn to the University of Hartford, and represented payments related to the education of Cindy Ebner, daughter of petitioner and Frank Ebner. During 1979, a total of $71,429.95 was deposited in the Chemical Bank account. Of this, $12,500 came from petitioner, and $40,000 to $50,000 from the Life Science Church. Frank Ebner became associated with the Life Science Church sometime during 1978. Petitioner's position is based upon the claimed existence *392 of a distinct separateness between petitioner and the activities of her husband on behalf of the Freedom Exchange Temple, which petitioner asserts was a church, and, therefore, an exempt organization within the meaning of section 170(c)(2); petitioner thus argues that her contributions in 1979 are deductible under section 170(a). The thrust of her argument is that, to the extent that the funds in the Freedom Church Temple account were used to pay charges that normally might be considered personal expenditures, they in fact represented expenses directly related to Frank Ebner's performance of his duties as a minister who was subject to a vow of poverty; those duties were allegedly performed on behalf of the Freedom Exchange Temple, either on its own behalf, or on behalf of the Life Science Church. The burden of proof, both as to the claimed deduction and the addition to tax, is on petitioner. ; ; Rule 142(a). Petitioner and her husband were the only witnesses at the trial. For the most part, their testimony was extremely vague and general. In any event, we *393 are not required to accept such testimony as gospel where we find it to be improbable, unreasonable, or questionable. ; ; (and cases collected therein), affd. by court order (2d Cir., Dec. 19, 1977). To the extent that petitioner's case rests on the tax-exempt status for the Life Science Church or the Freedom Exchange Temple, petitioner has clearly failed to carry her burden of proof. As to the Life Science Church, there is not a scintilla of evidence regarding its organization and operations. Cf. , affd. per curiam . As to the Freedom Exchange Temple, the record herein is similarly devoid of any probative evidence as to its organization and operations other than the unpersuasive organizational documents (see supra note 2) and the testimony of petitioner and Frank Ebner, which we find to be totally unconvincing. Even if we could find that there was sufficient *394 flesh and bones to the Freedom Exchange Temple so that it could be held to be a valid separate entity, we would conclude on the basis of this record that petitioner has failed to carry her burden of proof that it was anything more than a camouflaged personal pocketbook of petitioner and her husband. ;, affd. without published opinion . [3] Numerous checks from the bank account in the name of Freedom Exchange Temple were made payable to payees whose activities generally fall within the category of the furnishing of goods and services of a personal nature to their customers. Nothing in the record herein persuades us that the requirement of section 170(c)(2)(C) that "no part of the net earnings of [the claimed charitable organization] inures to the benefit of any private shareholder or individual" has been met.[4] The mere fact that petitioner herself had no signing authority over the account in the name of Freedom Exchange Temple is insufficient to support a finding that this requirement has been met. *395 In view of the foregoing, we hold that respondent's disallowance of the charitable contribution deduction of $12,500 should be sustained. As to the addition to tax, petitioner presented no evidence, other than that already discussed. We are satisfied that petitioner understood the requirements of section 170, and the regulations thereunder, and that she did not really expect that her $12,500 deduction would, if challenged, stand up. Accordingly, petitioner has failed to carry her burden of proof and respondent's determination of the addition to tax under section 6653(a) is likewise sustained. With respect to respondent's request that we award damages under section 6673, if the claimed charitable deductions had been the only issue, we would not have hesitated to grant respondent's request. But, we think that under the particular circumstances of this case, i.e., the other legitimate issues involved and the difficulties in obtaining the necessary evidence to satisfy respondent as to those issues in advance of trial, damages should not be awarded. In so concluding, we think it appropriate to warn taxpayers who come before the Court that the existence of a legitimate issue will *396 not automatically mean that the mandate of section 6673 will not be implemented in cases in which it is clear that the petitioning taxpayer insists on a trial on another issue with respect to which a position is maintained which we find to be frivolous or groundless. To reflect respondent's concessions on the issues of real estate taxes and interest expense, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, and all Rule references are to the Rules of Practice and Procedure of this Court.↩
2. We have placed quotes around "founded," "trustees," and "officers, because it cannot be determined from this record whether Freedom Exchange Temple had any separate legal existence. The application to open the bank account indicates that it was a nonprofit corporation, but there is no evidence that a corporation was in fact formed. The so-called organizational papers simply bear the unnotarized signatures of Frank Ebner, Sondra Ebner, and Ronald Ebner, and there is no evidence that they were ever filed anywhere.↩
3. See also, e.g., ; ; ; ; . ↩
4. Petitioner seeks to explain the payment of $2,562.50 to the University of Hartford for her daughter's benefit by asserting that it was authorized by the Life Science Church. Such authorization, even if in fact given, would not enable petitioner to satisfy the inurement test of section 170(c)(2)(C).↩